398 So.2d 84 (1981)
Patricia Ann Locke BURCH, Plaintiff-Appellee,
v.
Emmett BURCH, Jr., Defendant-Appellant.
No. 8180.
Court of Appeal of Louisiana, Third Circuit.
April 11, 1981.
*85 Brittain & Williams, Joe Payne Williams, Natchitoches, for defendant-appellant.
Charles W. Seaman, Natchitoches, for plaintiff-appellee.
Before GUIDRY, SWIFT and LABORDE, JJ.
GUIDRY, Judge.
This is a child custody case. The trial court awarded the pendente lite custody of twenty-eight month old Darlene Burch to the child's mother, Patricia Ann Locke Burch. Emmett Burch, the child's father, appeals from that judgment.
Appellant contends on appeal that the trial court abused its much discretion in awarding pendente lite custody of young Darlene Burch to her mother. In support of this contention, appellant urges that the trial court applied the legislatively overruled "maternal preference rule".
The facts in the instant case, although the subject of some dispute, present clearly the difficult position of the trial court in evaluating the competing interests of each parent. Patricia Ann Locke Burch and Emmet Burch, Jr. were married in September of 1975. One child, Darlene Burch, was born of that union. Mr. and Mrs. Burch, while living together, resided with Darlene and Mr. Burch's father, Emmett Burch, Sr., in a small woodframe house located in rural Simsboro, Louisiana.
Conflicting testimony was introduced regarding living conditions in the Burch home. However, photographs admitted into evidence showed an old and small woodframe house filled with worn and somewhat dilapidated furniture. Evidence indicated that the house consists of two bedrooms and one bathroom which, although equipped with a shower, has no bathtub. Testimony revealed that the house had been *86 without running water for a two month period and had only recently been repaired to correct a leaky roof and deteriorated porch. The trial judge noted in his reasons for judgment that the evidence indicated that the plumbing, bathroom and kitchen facilities were "very primitive". Space limitations in the home required that the child sleep with her grandfather.
The record discloses that Mr. Burch, Jr. is employed at a particle board plant where he is required to work long hours, seven days a week. Mr. Burch stated that he generally works from 3:00 p. m. until 11:00 p. m. although frequently he works overtime. Testimony received at trial indicates that if custody of the child is awarded to the father the young girl will be left solely in the care of her sixty-five year old grandfather for long periods of time. The elder Mr. Burch has a history of heart disease and fainting spells.
The record reflects that the Burches have had recurring marital problems which have resulted in Mrs. Burch leaving the matrimonial domicile on numerous occasions. Each time that Mrs. Burch departed, she went to her mother's home in Marthaville, Louisiana. Mrs. Burch testified that she did not take her young daughter with her when she departed the matrimonial domicile, but rather left the child in the care and custody of Mr. Burch and his father. Testimony at trial revealed that Mr. Burch and his father were the primary caretakers of the child even on those occasions when Mrs. Burch resided in the family dwelling. At trial Mrs. Burch made vague references to the fact that she was afraid to take the child from her husband although she gave no reason for her fear. We note that Mrs. Burch has suffered some degree of mental disturbance since the death of her father, approximately eight years ago. Shortly after the birth of her child, Mrs. Burch voluntarily entered Central Louisiana State Hospital for treatment of postpartum psychosis, a relatively common stress-induced condition related to childbirth. She was released after two months and continues to receive outpatient care from the Natchitoches Mental Health Clinic on a regular basis. Mrs. Burch is presently taking medication to control her condition. Her treating physician, Dr. Strother Martin, a psychiatrist, testified that Mrs. Burch exhibits no psychotic symptomatology at the present time. Further, Dr. Martin stated that with the continued use of medication, there appears to be no psychological disorder which would prevent Mrs. Burch from being a good mother.
Mrs. Burch presently resides with her mother in a spacious four bedroom brick house. Although unemployed, Mrs. Burch receives $119.00 per month from Supplemental Security income. Mrs. Burch's mother, Mrs. Locke, is employed on a parttime basis and has indicated her willingness to aid her daughter in caring for her infant granddaughter.
Louisiana Civil Code Article 146, which governs the award of custody of children pending litigation decreeing a separation from bed and board, and Article 157, which governs the award of permanent child custody, were amended in 1979 to eliminate any legal preference in favor of the mother in custody disputes. LSA-C.C. Article 146, as amended, provides in pertinent part:
"If there are children of the marriage, whose provisional keeping is claimed by both husband and wife, the suit being yet pending and undecided, it shall be granted to the husband or the wife, in accordance with the best interest of the children. In all cases, the court shall inquire into the fitness of both the mother and the father and shall award custody to the parent the court finds will in all respects be in accordance with the best interest of the child or children..."
"The language of C.C. Article 146 seeks to place both mother and father on an equal footing at the outset of proceedings involving an award of custody of their children and the role of the court is to determine the best interest of the child based on relative fitness and ability of competing parents in all respects to care for the child. See Thornton v. Thornton, 377 So.2d 417 (La. App.2d Cir. 1979). Thus, the welfare of the *87 child is always the paramount consideration in custody proceedings. We agree with our brethren of the Second Circuit, in Thornton, supra, who in commenting on the effect of the 1979 amendments to Articles 146 and 157, stated:
"The legislative amendments do not, however, do away with the real life fact, based on human experience, that it is often, in many if not most family circumstances, in the best interest of young children to be cared for by their mother. This nonmaterial concept remains a factor to be considered, along with many others, and will often compete with more materialistic factors that favor the father. It is correct, however, that this concept does not create a preference or presumption in favor of the mother that must be overcome by proof of the mother's unfitness or incapability."
In his oral reasons for judgment, which were transcribed in the record, the trial judge noted that courts traditionally award custody of children of tender age to the mother. In addition, the trial court noted that the record was barren of any evidence indicating that Mrs. Burch was unfit to have custody of her daughter. Appellant urges that these statements indicate the trial judge applied the legislatively overruled "maternal preference rule" in formulating the award of custody in the instant case. We disagree. We do not consider the trial court's observation that generally the mother is awarded custody of very young children to be an indication that he was applying the "maternal preference rule" in violation of the amended provisions of LSA-C.C. Article 146. Rather, we consider such statement to be a recognition, as stated by our brethren of the Second Circuit, of the "real life fact, based on human experience, that it is often, in many if not most family circumstances, in the best interest of young children to be cared for by their mother". We consider the court's observation as to the lack of evidence reflecting the mother's unfitness for custody as merely a statement in support of the court's finding that an award of custody to Mrs. Burch was in the child's best interest. In this latter connection, there is nothing in the record to sustain appellant's argument that the trial court placed any burden of proof on the appellant to establish Mrs. Burch's unfitness.
The trial court in its determination to award custody of the Burch's twenty-eight month old daughter to her mother considered the living conditions of both parties, the child care arrangements, the current mental health of Mrs. Burch, and the working hours of the parties and concluded that it was in the best interest of the child that custody be awarded to Mrs. Burch. Our courts have repeatedly held that great weight is to be accorded to the discretion of the trial judge in custody matters, and absent a finding of abuse of such discretion, the judgment will not be disturbed. Montgomery v. Montgomery, 383 So.2d 1384 (La. App. 4th Cir. 1980); Guillory v. Guillory, 221 La. 374, 59 So.2d 424 (1952); Bourque v. Leger, 322 So.2d 784 (La.App. 3rd Cir. 1975), writ refused, 325 So.2d 788 (La.1976); Nethken v. Nethken, 307 So.2d 563 (La. 1975). We discern no abuse of the trial court's much discretion in the instant case. The trial court had the opportunity to view the opposing parties and to evaluate the competing interests. The trial judge concluded that the welfare of the child mandated that custody pendente lite be awarded to Mrs. Burch. We find no error.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to the defendant-appellant.
AFFIRMED.