544 So.2d 452 (1989)
Salvadore A. TALLO and Patricia Pecora Tallo, his Wife, and National Distributing Company, Inc.
v.
The STROH BREWERY COMPANY and Paul Minnegan.
No. 89-CA-0003.
Court of Appeal of Louisiana, Fourth Circuit.
May 9, 1989.
Writ Denied June 30, 1989.
A. Remy Fransen, Jr., P. Chris Christofferson, Wiedemann & Fransen, New Orleans, for plaintiffs/appellants.
Thomas J. Wyllie, Martin A. Stern, New Orleans, for defendants/appellees.
Before SCHOTT, C.J., and LOBRANO and ARMSTRONG, JJ.
LOBRANO, Judge.
In their brief appellants suggest that the issue presented for our review is "[w]hether or not the jurisprudence of the State of Louisiana has now developed to a point where a cause of action for tortious interference with contract should be recognized." We do not agree that the issue is that broad.
Plaintiffs, Mr. and Mrs. Tallo and National Distributing Company, Inc., sued Stroh Brewery Company and Paul Minnegan. The allegations of their petition assert the following factual scenario.
In 1986, plaintiffs began negotiations with J. Alvin Badeaux and other principals of National Beverage Company to purchase a wholesale beer distributorship in Lafourche Parish. An agreement was reached whereby National Distributing Company (of which Tallo was the primary stockholder) would purchase the assets of National Beverage Company, including the wholesale agreement that company had with Stroh. Tallo, personally, would also purchase the assets of Balamor, Inc., a related company which owned certain real property used in conjunction with the operation of the distributorship.
As an element of the purchase, plaintiffs sought Stroh's approval of the control change. It is alleged in paragraph VII of the petition:
"Such control change procedures are provided for in the wholesaler agreements then existing between National Beverage Company, Inc. and the various breweries, particularly with The Stroh Brewery Company, defendant, under the terms of which it was provided that, while the approval of Stroh to a control change was necessary, and that certain notices and applications had to be made `Stroh *453 will not unreasonably withhold its approval of a proposed control change.'"
The petition then goes on to allege that Stroh did arbitrarily and unreasonably withhold its consent to the control change which resulted in a cancellation and termination of the purchase agreement between petitioners and National Beverage and Balamar, Inc. It is further alleged that Paul Minnegan, an agent or employee of Stroh, did participate in the unreasonable withholding of approval, and further, that such arbitrary withholding of consent resulted in the intentional and willful interference with plaintiffs' contractual arrangement which was the proximate cause of their damages.
Alternatively, plaintiffs assert that Stroh was guilty of simple negligence in that it failed to carefully and fully evaluate petitioners' application and thereby failed to act as reasonable persons under similar circumstances.
The trial court dismissed the petition for failing to state a cause of action. Specifically, the court found that "Stroh's Peremptory Exception of No Cause of Action with respect to plaintiffs' claim in tortious interference with contract is hereby granted...."
Plaintiffs filed the instant appeal arguing that the time has come in Louisiana for the courts to recognize a cause of action for tortious interference with contract. In support thereof, they cite numerous cases which they argue suggest that Kline v. Eubanks, 109 La. 241, 33 So. 211 (1902), and its progeny should be overruled. See, Sanborn v. Oceanic Contractors, Inc., 448 So.2d 91 (La.1984); PPG Industries, Inc. v. Bean Dredging, 447 So.2d 1058 (La.1984).
Defendants argue that only one narrow exception to Kline v. Eubanks has been recognized by our Supreme Court. In 9 to 5 Fashions, Inc. v. Spurney, 538 So.2d 228 (La.1989), the court held that a tortious interference with contract claim can be advanced against a corporate official where he has intentionally interfered with the contractual relationship between his employer (the corporation) and a third person (the plaintiff). Defendants point out that the court overruled Kline v. Eubanks, supra, and the delictual rule that absolutely barred any action on a tortious interference with a contract only insofar as that rule conflicted with 9 to 5 Fashions' holding.
This case is before us on an exception of no cause of action.
"The function of the peremptory exception of no cause of action is to test the legal sufficiency of the petition. The correctness of the well-pleaded allegations of fact is conceded. The issue is whether the face of the petition presents a case which legally entitles the mover to the redress sought. It is the sufficiency of the petition or motion in law which is put at issue by the exception." Hero Lands Co. v. Texaco, Inc., 310 So.2d 93 (La.1975) at 96.
Although categorized by plaintiffs as whether Louisiana should recognize a claim for tortious interference with contract rights, the issue for our review is whether, assuming all the facts pleaded to be true, plaintiffs are entitled to recovery.
It is generally recognized that Louisiana utilizes the fact pleading method of presenting a claim. See, Cox v. W.M. Heroman & Co., Inc., 298 So.2d 848 (La.1974); C.C.P. Arts. 854, 891, 1003 and 1004. It is not necessary to categorize the pleaded facts into a specifically defined cause of action. And, as noted by the Supreme Court in 9 to 5 Fashions, Inc., supra, the common law tort of interference with contract rights consists of a "rather broad and undefined tort in which no specific conduct is prescribed and in which liability turns on the purpose for which the defendant acts, with the indistinct notion that the purposes must be considered improper in some undefined way." Id. at 234, citing W. Prosser and P. Keeton, The Law of Torts, Sec. 129 (5th ed.1984). The court refused to adopt the entire expanded common law doctrine of interference with contract rights. Thus, we consider the pleaded facts in conjunction with our Civil Code and the relevant interpretative jurisprudence.
Civil Code Article 2315 is the source provision for delictual actions in Louisiana. It *454 provides, in pertinent part, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." The basis for all tort recovery is the fault of another. Fault can be the result of neglect, Art. 2316, or the relationship one party bears to another. Arts. 2317 thru 2322; Art. 667. If predicated on negligence, our courts have utilized a duty-risk analysis to determine if the complained of conduct constitutes fault. Dixie Drive It Yourself v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972). The courts must ascertain whether the defendant breached a legal duty imposed to protect against the particular risk involved. Id. "A duty can be based on a statute or ordinance or a jurisprudential rule of law." Pickett v. Jacob Schoen & Son, Inc., 488 So.2d 1257 (La.App. 4th Cir.1986) at 1258. Or, it may be determined from "... a consideration of the three R's: the relationship of the parties, the risks involved in the transaction or conduct and an appraisal of what a reasonable man would do or refrain from doing under these circumstances." Stone, Tort Doctrine, Louisiana Civil Law Treatise, Vol. 12, Sec. 305, p. 413, (1977).
Applying these principles to the instant case we note the following. The allegations of plaintiffs' petition assert that defendants are responsible because they unreasonably withheld their consent to the control change, or alternatively, they were negligent in reviewing the information submitted by plaintiffs. Implicit in those allegations is the presumption that defendants owed a duty to plaintiffs to act reasonably in considering their request for a change of control. Therefore, our inquiry is whether such a duty exists.
Plaintiffs allege that the contract between defendants and National Beverage Company provides that "Stroh will not unreasonably withhold its approval of a proposed control change." Undoubtedly, Stroh voluntarily undertook a duty to National Beverage Company to act reasonably. However, for the following reasons, we cannot extend that duty to third persons not parties to the contract.
Civil Code Article 1978 provides:
"A contracting party may stipulate a benefit for a third person called a third party beneficiary. Once the third party beneficiary has manifested his intention to avail himself of the benefit, the parties may not dissolve the contract by mutual consent without the beneficiary's agreement."
This article is a substantial reproduction of former Civil Code Article 1890. Generally referred to as a stipulation pour autrui, our Supreme Court has enumerated the following factors to be considered in deciding whether a third party advantage exists in a contract:
"(1) The existence of a legal relationship between the promisee and the third person involving an obligation owed by the promisee to the beneficiary which performance of the promisee will discharge;
(2) The existence of a factual relationship between the promisee and the third person where (a) there is a possibility of future liability either personal or real on the part of the promisee to the beneficiary against which performance of the promisee [sic] will protect the former; (b) securing an advantage for the third person may beneficially affect the promisee in a material way; (c) there are ties of kinship or other circumstances indicating that benefit by way of gratuity was intended." Andrepont v. Acadia Drilling Co., 255 La. 347, 231 So.2d 347 (1969), 231 So.2d at p. 351, citing Smith, Third Party Beneficiaries in Louisiana: The Stipulation Pour Autrui, 11 Tul.L.Rev. 18 (1936).
Recognition of third party beneficiary rights usually occurs where one party contracts to perform an obligation owed by another party to a third person. See, Dartez v. Dixon, 502 So.2d 1063 (La.1987); Andrepont v. Acadia Drilling Co., supra. The allegations of the pleadings in this case do not suggest that, at the time of its contract with Stroh, National Beverage Company owed an obligation to plaintiffs which Stroh agreed to fulfill. Nor do the allegations show a factual relationship *455 which suggests the possibility of a future liability by National Beverage to plaintiffs. Hence, we conclude that Stroh's duty to "not unreasonably withhold its approval" cannot be considered a stipulation in favor of plaintiffs. Such a duty is only owed to National Beverage.
Alternatively, the petition also asserts that defendants are guilty of simple negligence in failing to evaluate plaintiffs' application for change of control. Again, those allegations presuppose that defendants had a duty to plaintiffs to consider the application. Based on the pleadings, we find no such duty. As previously noted, defendants voluntarily bound themselves to National Beverage and not the plaintiffs. Any duties created by that contract flow only to the contracting parties and no one else.
Therefore, irrespective of the label plaintiffs place on their allegations, we find no cause of action asserted. Assuming all of their pleaded facts to be true, they still could not recover because there is no duty owed them by the defendants.
For the above and foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
SCHOTT, C.J., concurs with reasons.
SCHOTT, Chief Judge, concurring:
Both sides focused their arguments on whether 9 to 5 Fashions, Inc. v. Spurney decided by the Supreme Court of Louisiana on January 30, 1989 mandates a reversal of the judgment of the trial court which was rendered on October 25, 1988.
In 9 to 5 the court overruled its previous expressions barring absolutely any action based on tortious interference with a contract insofar as they conflict with 9 to 5. However, the court disavowed any intention "to adopt whole and undigested the fully expanded common law doctrine of interference with contract...." The court concluded this aspect of the opinion by stating, "In the present case we recognize, as set forth particularly herein, only a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person."
While the present case does not involve the same situation as the one in 9 to 5, I am not convinced that the Supreme Court's recognition of a cause of action for tortious interference with contract is limited to the narrow situation presented in the case. However, if the cause of action is to be expanded I consider it to be the Supreme Court's function to do so and not ours as an intermediate appellate court.