631 So.2d 563 (1994)
ACCREDITED SURETY AND CASUALTY COMPANY, INC., Plaintiff-Appellee,
v.
Wayne McELVEEN, Sheriff of Calcasieu Parish, Defendant-Appellant.
No. 93-678.
Court of Appeal of Louisiana, Third Circuit.
February 2, 1994.
Rehearing Denied March 11, 1994.
*564 Nancy Dunning, Byron P. Legendre, Lafayette, for Accredited Sur. and Cas. Co.
Michael Steven Beverung, Lake Charles, for Wayne F. McElveen, Sheriff for Calcasieu Parish.
Michael R. Garber, Lake Charles, for Sheral Lavergne.
Before GUIDRY and YELVERTON, JJ., and BERTRAND, J. Pro Tem.
GUIDRY, Judge.
Defendant, Wayne McElveen, Sheriff of Calcasieu Parish, appeals a judgment of the trial court awarding plaintiff, Accredited Surety and Casualty Company, Inc. (hereafter Accredited), damages in the sum of $33,000 plus interest for Sheriff McElveen's alleged tortious interference with a bail bond contract between Accredited and Anthony "Bo Dilly" Brown.
Accredited answered the appeal seeking reversal of the trial judge's dismissal of its claim under 42 USC § 1983 and a remand for determination of damages under said statute. Sheral Lavergne, an intervenor whose claim against Sheriff McElveen was dismissed by the trial court as prescribed, answered McElveen's appeal seeking reversal of the trial court's judgment insofar as it dismissed her intervention.

ANSWER TO APPEAL OF SHERAL LAVERGNE
Ms. Lavergne is not properly before this court on appeal and hence the issue raised in her "answer to appeal" will not be considered.
La.C.C.P. art. 2121 states in part: "An appeal is taken by obtaining an order therefor, within the delay allowed, from the court which rendered the judgment". We find neither an oral nor written motion for appeal by Ms. Lavergne in the record. As a panel of this court stated in Davis v. Funderburk, 274 So.2d 781 (La.App. 3rd Cir.1973), "unless a party litigant obtains an order of appeal duly granted by the trial court, there can be no appeal". Nor does Ms. Lavergne find any relief under La.C.C.P. art. 2133. In this case, Ms. Lavergne is not an appellee. Her intervention was dismissed via an exception of prescription filed by Sheriff McElveen. The Sheriff did not seek review of this ruling. "One appealing party [here, Ms. Lavergne] cannot by answer to the appeal obtain an amendment of the judgment in his favor *565 against another appealing party [here, the Sheriff]; an independent appeal is required for such relief". Grant v. Ouachita National Bank, 536 So.2d 647 (La.App. 2d Cir.1988). Since Ms. Lavergne did not timely appeal the trial court's judgment dismissing her intervention, said judgment is now final. See also Yount v. Maisano et al, 616 So.2d 1382 (La. App. 5th Cir.1993), writ denied, 620 So.2d 823 (La.1993).

FACTS
Early in 1988, defendant, Wayne McElveen, the Sheriff of Calcasieu Parish, noted that a number of insurance companies, licensed to post bail bonds in the parish, were delinquent in paying judgments which had ordered the forfeiture of numerous bonds. Inasmuch as he had made repeated written demand upon the companies for payment and was powerless to do more, he sought the assistance of the Calcasieu Parish District Attorney to enforce said judgments. The record reflects a letter from Sheriff McElveen, dated February 18, 1988, requesting help in collecting $182,415 in unpaid forfeitures. Some companies paid what was owed pursuant to the District Attorney's demands. Some, including Accredited, did not. More letters went from the Calcasieu Parish Sheriff's Office (CPSO) to the Calcasieu Parish District Attorney's Office (DA) with basically the same results being obtained. Such was the situation in November 1988.
On November 15, 1988, Anthony "Bo Dilly" Brown, an alleged major drug dealer, was arrested by the CPSO. Brown's bail was originally set at $500,000. One of Brown's associates and some members of his family immediately began contacting bail bonding firms to determine which one could handle Brown's bail. Among those contacted was Sheral Lavergne, an agent of Professional Bonding Service who wrote bail bonds for Accredited, the plaintiff herein. Additionally, Brown's attorney filed a motion for a bail reduction hearing.
A bail reduction hearing was held on Tuesday, November 22, 1988. Bail was set separately on each of the six charges on which Brown was arrested. The aggregate of the six bail fixings amounted to $330,000. That afternoon Ms. Lavergne and Steve Gennuso, an owner of Professional Bonding, Accredited's general agent in the state, attempted to post Brown's bond. They were informed that, because of the amount involved, the bond would have to be personally approved by Sheriff McElveen, but that the sheriff was out of the office attending his mother's funeral.
It was the next afternoon before Ms. Lavergne and Gennuso could get to see Sheriff McElveen. After reviewing the bail bond documents, Sheriff McElveen requested that Gennuso accompany him to Judge Gregory Lyons' chambers. At this meeting, Judge Lyons informed Gennuso that the District Attorney of Calcasieu Parish, had filed a suit for preliminary injunction against Accredited seeking to have Accredited barred from writing any further bail bonds in Calcasieu Parish until its outstanding forfeitures were paid; he had granted a TRO restraining Accredited from writing any bonds; and, he had set Wednesday, November 30, 1988, as the hearing date on a rule for a preliminary injunction.
When the people who had been attempting to arrange Brown's bail bond learned of the foregoing action, they contacted Ira Pat Fuselier, a bail bond agent for Indiana Lumbermens Mutual Insurance Company whom they had consulted before settling on Accredited as their first choice, to arrange Brown's bail. Indiana Lumbermens was successful in arranging Brown's bail and earned the $33,000 premium which Accredited would have earned had it written Brown's bond.
Following the November 30, 1988 hearing in which a preliminary injunction was granted, Accredited paid the forfeited bonds under protest and attempted, untimely, to attack that judgment. Thereafter, Accredited filed the instant suit for damages contending the Sheriff tortiously interfered with its contract with Brown and/or the Sheriff violated its rights under 42 USC § 1983. Accredited originally also sought damages for lost future income and damage to its reputation, but those demands were dropped by way of an amended petition, leaving only demands for damages in connection with the November 1988 incident.
*566 In January 1991, Sheral Lavergne and Professional Bonding, Inc. filed petitions for intervention seeking damages they allegedly sustained as a result of the forgoing incident. In response to those demands, Sheriff McElveen filed exceptions of prescription which were referred to the merits. After trial, the court maintained both exceptions. Professional Bonding did not attempt to appeal and, as we stated at the outset, Ms. Lavergne's attempt at appeal by answer is ineffective.
The trial court awarded Accredited damages in the sum of $33,000 for the Sheriff's tortious interference with its contract with Brown, but denied its civil rights claim under 42 USC § 1983. The Sheriff appealed. Accredited answered the appeal contesting the trial court's dismissal of its § 1983 action and the trial court's refusal to hold Sheriff McElveen personally liable for plaintiff's damages.
On appeal, defendant raises two issues: (1) the trial court erred in finding he tortiously interfered with Accredited's contractual relationship with Brown; and, in the alternative, (2) the trial court's fixing of damages as the gross premium on the bond rather than the net Accredited would have earned. Accredited answered also arguing two errors: (1) dismissing Accredited's civil rights claim under 42 USC § 1983; and, (2) the trial court's failure to find Sheriff McElveen personally liable.

APPELLEE'S CLAIM UNDER 42 U.S.C. § 1983
The basis of a § 1983 action was discussed by a panel of this court in Whitney v. Mallet, 442 So.2d 1361 (La.App. 3rd Cir.1983), writ denied, 445 So.2d 437 (La.1984), wherein we explained:
Every person who, under color of state law, causes another to be deprived of any rights, privileges, or immunities secured by the Constitution and laws, is liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C.A. § 1983....
Acts of police officers who undertake to perform their official duties are included within the meaning of 42 U.S.C.A. Section 1983, whether they hew to the line of their authority or overstep it. Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). It is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer has acted under color of law. Johnson v. Hackett, 284 F.Supp. 933 (1968); Robinson v. Davis, 447 F.2d 753 (4th Cir.1971).
To recover under § 1983 a plaintiff must prove that his constitutional rights have been violated. Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). Some of a person's protected constitutional rights listed in Davis, supra, include the Fourth Amendment guarantee against unreasonable searches and seizures, and the Fifth Amendment guarantees that no person shall be deprived of life, liberty, or property without due process of and equal protection under the laws.
Plaintiff argues it has viable claims under § 1983 for both denial of due process in the issuance of the TRO of November 23, 1988 and the instigation of malicious prosecution by the Sheriff. The TRO of November 23, 1988 was issued by a district court judge when, after examining the petition and supporting documents filed in suit number 88-5298 of the Fourteenth Judicial District Court, he was convinced there was a probability of irreparable harm had not the TRO been issued. The suit was filed by the District Attorney of Calcasieu Parish, the proper party to bring the suit, in the proper forum for a legitimate purpose.
Under La.C.Cr.P. art. 321 the sufficiency of security posted by a bail bond or surety company is within the discretion of the court having trial jurisdiction over the offense charged and such court may, on its own motion or on motion of the State, for good cause shown, order the clerk of court to refuse to accept appearance bonds written by such company. In the instant case, the District Attorney and the Judge of the Fourteenth Judicial District Court who issued the TRO were acting pursuant to and strictly in accordance with state law.
Although it may be that the suit for injunction was instituted by the District Attorney as a result of repeated requests by Sheriff *567 McElveen for assistance in the collection of judgments ordering bond forfeitures and/or because of past experience, the Sheriff doubted that a bail bond issued by Accredited constituted sufficient security, the fact remains that the proceedings were instituted by the District Attorney and the TRO was issued by the Judge having jurisdiction over the offense charged, all strictly in accordance with La.C.Cr.P. art. 321. Sheriff McElveen had no authority to either institute or prosecute a proceeding under La.C.Cr.P. art. 321 and, under the circumstances, did not act "under color of state law" to deprive Accredited of any of its rights, privileges etc. secured by the Constitution. In sum, appellee has failed to show that it has been deprived of due process or equal protection of the law.
As to the claim of malicious prosecution, the elements of a federal claim of malicious prosecution under § 1983 and the due process clause are generally the same as those under state tort law. Thomas v. Frederick, 766 F.Supp. 540 (W.D.La.1991); Sanders v. English, 950 F.2d 1152 (5th Cir.1992). In Owens v. Jackson, 550 So.2d 359 (La.App. 3rd Cir.1989), this court stated:
The essential elements for a claim for malicious prosecution are:
1. The commencement or continuance of an original criminal or civil judicial proceeding;
2. Its legal causation by the present defendant in the original proceeding;
3. Its bona fide termination in favor of the present plaintiff;
4. The absence of probable cause for such proceeding;
5. The presence of malice therein; and
6. Damage conforming to legal standards resulting to plaintiff.
The Louisiana Supreme Court in Miller v. East Baton Rouge Parish Sheriff's Department, 511 So.2d 446 (La.1987), on remand, 522 So.2d 578, writ denied, 524 So.2d 520 (La.1988), gave us a more complete statement of element (2) of a claim for malicious prosecution: "... its legal causation by the present defendant against plaintiff who was defendant in the original proceeding ...". The present defendant, Sheriff McElveen, was not the plaintiff in the original suit, the district attorney was. While it is true, as plaintiff states in brief, "A civil injunction proceeding was commenced against Accredited;...", it was not the defendant herein, Sheriff McElveen, who brought or legally caused the suit. That was a civil action in which the district attorney, who actually filed the suit, was the proper plaintiff.
Even if, in arguendo, it be considered that the Sheriff "legally caused" the suit to be filed, appellee's claim of malicious prosecution must fail for other necessary elements. The trial court denied Accredited's claim. The dismissal of a claim for malicious prosecution requires, among others, a factual determination of malice. Under the existing standards of appellate review as set forth in Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973), and their progeny factual determinations of the trial court are reversible only if found to be manifestly erroneous or clearly wrong. Our examination of the record supports no such finding herein.
For these reasons, we affirm the trial court's dismissal of Accredited's claim under 42 USC § 1983.

DEFENDANT'S APPEAL
Defendant raises two issues on appeal. As we find merit in the first issue raised, i.e., the trial court erred in finding he tortiously interfered with Accredited's contractual relationship with Brown, we will not address the second issue.
Accredited bases its claim of tortious interference with contract on the Sheriff's ongoing efforts to prompt the district attorney to collect a number of outstanding, forfeited bail bonds. Before the Sheriff began his letter writing campaign to the district attorney, he had tried to collect forfeited bonds by removing the names of bail bond agents who represented companies who had uncollected, outstanding forfeitures from the approved telephone list he kept posted in the jail. When this practice was ruled illegal in a suit by one of the affected bail bond agents, the Sheriff turned to the district attorney, who in accordance with La.R.S. 15:85 is the *568 proper party to move for forfeiture of and to collect forfeited bail bonds. Plaintiff bases his claim of tortious interference on these actions by the Sheriff.
The history and current status in Louisiana of a cause of action based on interference with contract was, most recently, discussed in detail by our brethren of the Fifth Circuit in the case of Colbert v. B.F. Carvin Construction Co., 600 So.2d 719 (La.App. 5th Cir.1992), writs denied, 604 So.2d 1309, 1311 (La.1992), wherein that court refused to expand an action based on interference with contract past that established by the Louisiana Supreme Court in 9 to 5 Fashions, Inc., infra. While the facts in Colbert, supra, bear no semblance to those herein, the issues raised are identical. In Colbert, supra, at 721, 722, the court stated:
... [P]laintiffs ... have pled intentional interference with contract and negligent interference with contract as causes of action...
The threshold issue before this court is whether a cause of action exists in Louisiana for any of these theories.
The Louisiana Supreme Court recognized "a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person." 9 to 5 Fashions, Inc. v. Spurney, 538 So.2d 228 (La.1989) at 234. The Spurney court noted in dicta at 232-234:
Louisiana is now the only American state that does not recognize the action for tortious interference with contractual relations. [citations omitted].
* * * * * *
Moreover, a delictual rule such as Kline v. Eubanks[, 109 La. 241, 33 So. 211 (1902)] that flatly and without good reason deprives an innocent person of any remedy for damage to his contract right caused intentionally and improperly by a corporate official is discordant with the fundamental civil law principle that obliges a person to repair damage caused another by his fault. La.Civ.Code art. 2315.
* * * * * *
Accordingly, our courts' previous expressions barring absolutely any action based on a tortious interference with a contract are annulled insofar as they conflict with this opinion. [citations omitted]. It is not our intention, however, to adopt whole and undigested the fully expanded common law doctrine of interference with contract, consisting of "a rather broad and undefined tort in which no specific conduct is proscribed and in which liability turns on the purpose for which the defendant acts, with the indistinct notion that the purposes must be considered improper in some undefined way." [citation omitted]. Some aspects of this tort have been subjected to serious criticisms, leaving open a good many questions about the bases of liability and defense, the types of contract or relationship to be protected, and the kinds of interference that will be actionable. [citations omitted].
The Spurney court specified it was only recognizing the duty owed by a "corporate officer" in this regard.
However, it is not so clear whether a broad remedy exists with regard to the tort of intentional interference of contract. The Fourth Circuit has declined to expand such a tort beyond the narrow confines of Spurney. Tallo v. Stroh Brewery Co., 544 So.2d 452 (La.App. 4th Cir.1989), writ denied, 547 So.2d 355 (La.1989).
In his concurring opinion to Tallo, supra, Chief Judge Schott noted at 455:
While the present case does not involve the same situation as the one in 9 to 5, I am not convinced that the Supreme Court's recognition of a cause of action for tortious interference with contract is limited to the narrow situation presented in the case. However, if the cause of action is to be expanded I consider it to be the Supreme Court's function to do so and not ours as an intermediate appellate court.
The Fifth Circuit went on to note, citing Great S.W. Fire Insurance v. CNA Insurance, 557 So.2d 966 (La.1990), that "... there is as yet no remedy in Louisiana for negligent interference with contract". See *569 also Frisard v. Eastover Bank for Savings, 572 So.2d 343 (La.App. 5th Cir.1990).
We, like our brethren of the Fourth and Fifth Circuits, refuse to expand a cause of action for tortious interference with contract beyond the narrow situation outlined in 9 to 5 Fashions, Inc., supra, at 234, wherein the court stated:
[W]e recognize, as set forth particularly herein, only a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person.

. . . . .
For purposes of analysis, the action against a corporate officer for intentional and unjustified interference with contractual relations may be divided into separate elements: (1) the existence of a contract or a legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome; (4) absence of justification on the part of the officer; (5) causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer.
(Emphasis ours).
Even if, in arguendo, we would be inclined to expand a tortious interference with contract cause of action beyond 9 to 5 Fashions, Inc., supra, we do not find the facts in this case to support any such action. Although the Sheriff's legitimate efforts, through the District Attorney, to enforce collection of forfeited bail bonds and to assure sufficiency of a bond to be issued in the Brown case, may have interfered with the ultimate confection of a contract between Accredited and Brown, such action can hardly be deemed negligent or tortious interference with contract. The action filed by the District Attorney pursuant to La.C.Cr.P. art. 321 was authorized under the circumstances. Once the court issued the TRO, the sheriff could not accept a bond from plaintiff.
Accordingly, for the reasons stated, the judgment of the district court is reversed and set aside and plaintiff's suit is ordered dismissed with prejudice and at its costs both at the trial level and on appeal except for such costs as were assessed against intervenors, Sheral Lavergne and Professional Bonding Service, Inc., at the trial level.
REVERSED AND RENDERED.